**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **SENLY FOX** | § | |
| *Plaintiff,* | § | |
| | § | **CIVIL ACTION NO. _____** |
| **vs** | § | |
| | § | |
| **NATIONAL SIGNS, LLC** | § | **JURY TRIAL DEMANDED** |
| *Defendant* | § | |

**PLAINTIFF'S  ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, SENLY FOX, complaining of the Defendant,

NATIONAL SIGNS, LLC, and for cause would respectfully show unto the Court the following:

## I.    PARTIES

1.    Plaintiff SenLy Fox is a resident of Harris County, Texas.

2.    Defendant National Signs, LLC (hereinafter as SIGNS) is a domestic for-profit entity

registered with the Texas Secretary of State, headquartered in Houston, Texas, and may be

served with process herein by its registered agent for service of process, Gordon & Rees,

2200 Ross Avenue, Suite 3700, Dallas, Texas 75201, or its registered agent, CT Corp

System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

3.    To the extent that the above named Defendant is conducting business pursuant to a trade

name or assumed name, then suit is hereby brought against them pursuant to the terms and

provisions of Rule 28 of the Texas Rules of Civil Procedure, and Plaintiff demands that upon

answering suit, that Defendant answer in their correct legal name and assumed name.

## II.   JURISDICTION & VENUE

4.      Jurisdiction is proper pursuant to Texas Labor Codes §21.051 (as amended). All jurisdictional prerequisites and conditions precedent, pursuant to TRCP Rule 54, have been met. Defendant IPM., qualifies as an "employer" under §21.002(8)(a) of the Texas Labor Code.   Moreover, the Court has jurisdiction over the Plaintiff's state law-claims of a violation of  § 21.000 *et seq*. of the Texas Labor Code ("TCHRA") by virtue of 28 U.S.C. § 1367.

5.      Venue is proper in Harris County, Texas because it is the county in which all or a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred ( Tex. Civ. Prac. & Rem. Code §15. 002(a)(1), and the Defendant SIGNS, has it's principal office in the State of Texas, County of Harris - with significant business contacts in the City of Houston, County of Harris. (Tex. Civ. Prac. Rem. Code §15.002(a)(3)).

6.      Venue and Jurisdiction are also proper in this district under 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to them occurred in this District. Jurisdiction is further established  via Federal Question, pursuant to U.S. Const. Art. 3, §2; 28 U.S.C. §1331.

## III.   EXHAUSTION OF ADMINISTRATIVE REMEDY

7.      Mrs. Fox exhausted her administrative remedies pursuant to the requirements of 42 U.S.C. § 2000e *et seq*, and has taken all steps necessary to bring the causes of action made the subject of this litigation.

8.      On or about **August 22nd, 2018**, Mrs. Fox filed her FORM 5 Charge of Discrimination with the Equal Employment Opportunity Commission. [ **Plaintiff's Exhibit A** ]   Designated by Charge Number **846-2018-13482**, the charge clearly outlines claims for Discrimination and Retaliation based on the Claimant's Gender.

9.      Regarding this first requirement, Mrs. Fox's Charge filed on **August 22nd , 2018**, means that any adverse action occurring within three hundred (300) days before that date ( i.e. back to **October 26th, 2017** ) is actionable under Title VII.

10.     On or about **March 6th, 2020**, Ms. Sanders received a Dismissal and Notice of Rights Letter [ **Plaintiff's Exhibit B** ] issued by the Equal Employment Opportunity Commission.  This letter qualifies Ms. Sanders' right to initiate litigation, giving an operational window of ninety (90) days from the above date.  Statute of Limitations closes on or about **June 5th, 2020.**  Plaintiff therefore files her Original Complaint prior to this date in order to maintain her cause(s) of action.

## IV.    ALLEGATION OF FACTS

11.     Mrs. SenLy Fox was hired by National Signs in 2013 as a Vice President of Sales and Marketing.  In this position, she was in charge of supervising the company's direct sales, marketing, administrative, design, project coordination, and training activities. Mrs. Fox reported directly to the company President & CEO, Mr. Greg Hollenberg.

12.     National Signs is owned primarily by TULCAN.  Tulcan is a private equity investment company, and is operated by Mr. Louis Girard, Mr. Wirt Blaffer, and Mr. David Hartland. However, Mr. Hollenberg and Mr. John Graff also have a percentage of ownership, respectively.

13.    In late 2017, National Signs began an investigation of sexist and harassing conduct by Mr. Allen Sawyer, the company's Senior Estimator.  On information and belief, this investigation began after Mr. Sawyer spread a false rumor that Mrs. Fox was having an extramarital affair with Mr. Hollenberg.  This was not first time an issue like this has happened - there have been multiple instances throughout the tenure of her employment, where Mrs. Fox complained of harassing behavior by her co-workers Mr. John Graff (a partial owner and Vice President of Production of National Signs, LLC), and Mr. Jason Graff, his son.

14.    On personal knowledge, Mrs. Fox is aware that Mr. Sawyer told new / incoming employees that Mrs. Fox was having an extramarital affair with Mr. Hollenberg – an incident which the employee believed required the involvement National Signs, LLC Human Resources.  This was the incident which initiated the sexual harassment investigation above. In the furtherance of this investigation regarding Mr. Sawyer, an attorney from Norton Rose Fulbright interviewed Mrs. Fox on or around December 21st, 2017.  Mrs. Fox reported to the attorney several incidents of harassment of herself, and several other female employees of National Signs,  by Sawyer –  as well as incidents of harassment involving Mr. John Graff and Mrs. Jason Graff, additional National Sign employees.

15.    There were multiple incidents where Mr. Sawyer mistreated female staff, and eventually Mr. Hollenberg was forced to address the issue with him.  During a discussion of Sawyer with Mr. Hollenberg, he confided in Mrs. Fox that he had concerns that Sawyer was a misogynist and "had an issue with [Mrs. Fox], as a woman, being in a leadership role."

16.    Ultimately Mr. Sawyer was terminated sometime in early 2018, but on information and belief, he has recently been re-hired by National Signs, LLC.

17.  During the week of March 5th, 2018, Mrs. Fox observed Louis Girard and David Hartland in a conference room at the company. She was informed that they would be interviewing some departing employees, and that all of the employees interviewed were in the fabrication department.

18.  Mr. Girard and Mr. Hartland did not interview anyone in Mrs. Fox's department, and they did not interview Mrs. Fox herself.  Moreover, on personal knowledge, they did not interview or involve Mr. Hollenberg – or any other senior leader in the National Signs organization – in any of these interviews.

19.  On March 7th, 2018, Mrs. Fox spoke with Mr. Hartman and Mr. Girard to let them know that, as of that day, SIGNS had closed a couple of big deals and was already in complete alignment with financial projections for the year.  In addition, Mrs. Fox informed them that the company would be finishing between $4-5 million in sales for March, and were having one of the best 1st quarters in the company's history, as all deals within their sales funnel were set up to close.  Finally, Mrs. Fox was able to report that she and her committee were able to successfully complete drafting the sales training manual that laid out comprehensive processes for every role under her charge.

20.  Two days later, on Friday, March 9th, 2018, Mrs. Fox was terminated "without cause" by Mr. Hartman, Mr. Girard, Mr. Blaffer, and Mr. Hollenberg.  A copy of the termination letter they given to Mrs. Fox is attached. **[ Plaintiff's Exhibit C ]** They informed her that she was being terminated because the company wanted to "go in a different direction".  Present at this meeting was Ms. Amanda Tanner, the company's HR representative, acting as a witness to the termination.

21.    Although the termination letter was signed by Mr. Hollenberg, he later informed Mrs. Fox that it was not his decision to terminate her.  Mrs. Fox was aware of some possible "performance concerns" from that year, however – those issues were put beyond her control, and directed against her judgment and efforts. Specifically, Mr. John Graff directed her to walk away from multiple business deals totaling approximately $1.5m USD.  Mr. Hollenberg and the TULCAN group were made aware of all of this at every step of dealings.  To couch the above as "performance issues" for Mrs. Fox would be both disingenuous and dissembling, if not an outright obfuscation of fact.

22.    Mr. Hollenberg later told Mrs. Fox that he had been pulled into a meeting with the Tulcan group about a half hour before her scheduled meeting with them, wherein he was told that Mrs. Fox was being let go.  Purportedly, the Tulcan Group told Mr. Hollenberg he was to terminate Mrs. Fox, and then presented Mr. Hollenberg with two letters.

23.    Allegedly, one letter was "from" Mr. Hollenberg, and offered a small severance in exchange for a release of claims.  The other letter was purportedly from Mr. Louis Girard and offered no severance.  Mr. Hollenberg informed Mrs. Fox that he had no prior notice that TULCAN had concerns regarding her performance or wanted to terminate her.  Mr. Hollenberg further opined  that he did not agree with their decision.

24.    Mr. Hollenberg is prepared to offer his personal sworn testimony regarding the above ultimatum given to him by TULCAN.

25.    After her termination, Mrs. Fox applied to the Texas Workforce Commission for unemployment benefits, and reported truthfully what had been told to her:  that she had been let go without cause. Initially, National Signs, LLC did not respond to the Texas Workforce

Commission's requests for information about its separation with Mrs. Fox.

26.    However, after Mrs. Fox was awarded unemployment benefits, National Signs, LLC appealed the decision, claiming for the first time that I had been fired for "misconduct."

27.    National Signs offered no documents or witnesses to support that claim of "misconduct".

28.    At the hearing on the appeal, its attorney of record – Mr. Jason Regas, of Gordon & Rees – nonetheless stated to the hearing officer that Mrs. Fox was fired because she "had an affair with Mr. Hollenberg" and that Mrs. Fox had somehow fabricated the sales figures of National Signs, LLC in conjunction with Mr. Hollenberg.  No proof of the above allegations was offered.  No witness were presented to substantiate the claims set forth against Mrs. Fox.

29.    It was at this point that National Signs, LLC's reason for it's separation from Mrs. Fox evolved from "moving in a different direction" to "Misconduct including an extra marital affair with the President and CEO of National Signs, LLC, and the fabrication and/or falsification of sales data regarding the company."

30.    Of note, the Texas Workforce Commission rejected National Signs' appeal – and the lascivious and erroneous basis for same – and awarded benefits to Mrs. Fox.

31.    Mr. Hollenberg was not terminated with Mrs. Fox for "misconduct including an extra marital affair with the President and CEO of National Signs, LLC, and the fabrication and/or falsification of sales data regarding the company."

32.    The company's sexist accusations during the TWC unemployment hearing plainly convey that Mrs. Fox was terminated because she was a woman accused of sleeping with her boss, and in retaliation for her reports and complaints to the investigating attorney regarding the sexist, harassing, and discriminatory behavior of Mr. Sawyer and Mr. John and Jason Graff.

National Signs' act of further contesting her unemployment claim was further retaliation.

33.    It is, therefore, Mrs. Fox's belief that, because of her gender, she was wrongfully terminated, discriminated against, and harassed, in violation of Title VII of the Civil Rights Act and the Texas Labor Code. It is also her contention that she was retaliated against because she reported unlawful behavior to the company and participated in an investigation of unlawful behavior all in violation of Title VII of Title VII and Chapter 21, by Mr. Sawyer and other National Signs co-workers.

## V. CAUSES OF ACTION

**[A]    GENDER DISCRIMINATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 under 42 U.S.C. §2000e-2 *et seq*.**

34.    Plaintiff hereby adopts all factual allegations above *in haec verba*.

35.    A claim of intentional Gender discrimination may be proved by either direct or circumstantial evidence. See *Wallace v. Methodist Hosp. Sys*. 271 F.3d 212, 219 (5th Cir. 2001).  In cases of circumstantial evidence, courts usually follow the burden shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), for indirect discrimination claims. See *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005).

36.    To establish a *prima facie* case of discrimination, a plaintiff must establish she: (1) is a member of a protected class; (2) was qualified for the position at issue; (3) was subjected to an adverse employment action; and (4) was replaced by someone outside the protected class, or other similarly situated persons were treated more favorably.  *McCoy*, 492 F.3d at 556; *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

37.     In the instant case, Plaintiff is prepared to show that she (1) is a member of the class (female) who is intended to be protected by the statute; (2) was qualified for the position at issue, an irrefutable fact as she was vetted and hired by the Defendant; (3) was subject to adverse employment actions, in the form of sexual harassment, the creation of a hostile work environment, and her ultimate termination; and (4) other similarly situated persons were treated more favorably – If Mrs. Fox had engaged in an affair with Mr. Hollenberg, and she was fired for it – he was not. *Id.*

**[B]     GENDER DISCRIMINATION UNDER CHAPTER 21 OF THE TEXAS LABOR CODE under the Texas Commission on Human Rights Act §21.002 *et seq* of the Texas Labor Code (the "Act")**

38.     Plaintiff brings suit against Defendant for damages sustained as a result of their discrimination in wilful violation of the Texas Commission on Human Rights Act **§**21.000 *et seq* of the Texas Labor Code (the "Act").

39.     Plaintiff adopts the factual allegations herein above as stated *in haec verba*.

40.     Under §21.051 of the Texas Commission on Human Rights Act (codified within §21.000 *et seq* of the Texas Labor Code): An employer commits an unlawful employment practice if because of ...sex, the employer: (1)... discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or (2) limits, segregates, or classifies an employee ... in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee. *Id.*

41.     Pursuant *Ysleta ISDA v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005). "To prevail on a claim of gender discrimination, the plaintiffs had to prove that (1) they were members of a class

protected by the act, (2) they were qualified for their positions, (3) they were terminated, and (4) they were treated less favorably than similarly situated members of the opposing class. *Id*.

42.     In this case, Plaintiff (1) as a female, belongs to a protected class, (2) was qualified for her position, (3) was terminated from her position, and (4) the plaintiff was treated less favorably than similarly situated male employees. *Id.* Moreover, Plaintiff would show that the harassment and negative treatment was severe, pervasive, and that it destroyed her opportunity to succeed in the workplace.  Plaintiff further contends that the harassment created an objectively hostile work environment, which a reasonable person would find hostile or abusive.

43.     Under §21.125 of the Texas Commission on Human Rights Act (codified within §21.000 *et seq* of the Texas Labor Code): Except as otherwise provided by this chapter, an unlawful employment practice is established when the complainant demonstrates that race, color, sex, national origin, religion, age, or disability was a *motivating factor* for an employment practice, even if other factors also motivated the practice, unless race, color, sex, national origin, religion, age, or disability is combined with objective job-related factors to attain diversity in the employer's work force. *(Emphasis added) Id*.

44.     Plaintiff argues that gender was the reason she was subjected to adverse employment actions, including her ultimate termination, and would also contend that gender was a motivating factor - in part or in whole - regarding such adverse employment actions, as well as her eventual termination.  Plaintiff is prepared to show that no objective job-related factor exists which would foster the requirement of her immediate termination from employment, and

would argue that no legitimate non-discriminatory reasons exists that would challenge her assertions.

45.     Plaintiff alleges and will prove that Defendants illegally discriminated against her based upon her gender under the Texas Commission on Human Rights Act: **§**21.000 *et seq* of the Texas Labor Code.

**[C]     GENDER RETALIATION UNDER TEXAS LABOR CODE §§21.055 *et seq.*, and in the alternative, 42 U.S.C. §2000e-3(a) *et seq.* OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (as amended)**

46.     Plaintiff adopts the factual allegations herein above as stated *in haec verba*.

47.     Plaintiff brings suit against Defendant for damages sustained as a result of their retaliation in wilful violation of the Texas Commission on Human Rights Act **§**21.055 of the Texas Labor Code (the "Act"), stemming from her complaint of harassing and inappropriate behavior by Mr. Sawyer, the company Estimator, & Mr. John Graff, and his son, Jason Graff – partial owners of National Signs, LLC.

**[1]     Retaliation under §21.055 *et seq* of the Texas Labor Code**

48.     Plaintiff adopts the factual allegations herein above as stated *in haec verba*.

49.     Pursuant to §21.055 of the Texas Labor Code, an "employer" is prohibited from retaliating or otherwise discriminating against a person who: (1) opposes a discriminatory practice, (2) makes or files a charge; (3)  files a complaint;  or (4)  testifies, assists, or participates in any manner in an investigation, proceeding, or hearing. See Texas Labor Code §21.055.

50.     A plaintiff can establish a *prima facie* case of unlawful [21.055] retaliation by showing: (1) the employee engaged in a protected activity, in the form of complaining of Mr. Sawyer's

& Mr. Graff's sexually inappropriate and harassing behavior – as well as assisting in an investigation of sexual harassment, ostensibly conducted by Norton Rose Fulbright, (2) the employer took adverse employment action against the employee, and (3) a causal connection showing the employer took the adverse employment action based on the employee's engagement in the protected activity..." *Cox & Smith, Inc. v. Cook*, 974 S.W.2d 217, 223 (Tex.App. – San Antonio 1998, pet. denied). *Wal-Mart Stores, Inc. v. Lane*, 31 S.W.3d 282 (Tex. App.-Corpus Christi 2000, pet. denied).

51.    In order to engage in a protected activity, an employee must complain about discrimination covered by the TCHRA / Chapter 21 of the Texas Labor Code. *Anderson v. Limestone County, Texas*, 2008 Tex. App. LEXIS 5041 (Tex. App. – Waco July 2, 2008, pet. denied). (quoting *Spinks v. Trugreen Landcare, L.L.C.*, 322 F. Supp. 2d 784, 796 (S.D. Tex. 2004)). If the plaintiff makes this showing, the burden shifts to the defendant-employer to articulate a legitimate non-retaliatory reason for the adverse employment action. *Hernandez v. Grey Wolf Drilling, L.P.*, 350 S.W.3d 281, 286 (Tex. App. – San Antonio 2011).   Under the tenants of the TCHRA, "a 'but-for' causal nexus must exist between the protected activity and the employer's prohibited conduct." *Anderson v. Limestone County, Texas*, 2008 Tex. App. LEXIS 5041 (Tex. App. – Waco no pet.)(quoting *Herbert v. City of Forest Hill*, 189 S.W.3d 369, 377 (Tex. App. – Fort Worth 2006, no pet.))

52.    The standard of proof is that the plaintiff must show that "without his protected activity, the employer's prohibited conduct would not have occurred when it did." *Id*.  While this *appears* to be the same 'but-for' causation standard in a Title VII retaliation claim, the courts in Texas have made a further qualification, stating that "the plaintiff need *not*

establish that the protected activity was the *sole* cause of the employer's prohibited conduct." (emphasis added) *Id*.                                                                                          .

53.   To "assert a claim of retaliatory discharge, the plaintiff must... establish...a *prima facie* case of discrimination, which...gives rise to a presumption that the employer unlawfully discriminated against the employee. The burden then shifts to the...employer to rebut this presumption by articulating a legitimate, nondiscriminatory reason fore the adverse employment action. The employer meets its burden by setting forth...a reason for dismissal legally sufficient to justify a judgment in its favor.*" Graves v. Komet*, 982 S.W.2d 551, 554-555 (Tex.App. – San Antonio 1998, no pet.)

54.   Pursuant to the factual allegations and arguments above, Plaintiff has established a *prima facie* case of discrimination.  Plaintiff further assert her claim of retaliation in satisfaction of the requisite elements of TCHRA §21.055, namely; (1) the Plaintiff engaged in a protected activity of complaining about discrimination and assisting in an investigation thereof; (2) her employer took adverse employment action against her, culminating in her retaliatory termination; and  (3) Plaintiff argues that there is a causal connection showing the employer took the adverse employment action based on the employee's engagement in the protected activity, further evidenced by *extreme proximity in time*.

55.   Finally, Plaintiff argues that under *Anderson*, her written & verbal complaints regarding sexually inappropriate behavior, combined with her involvement in an investigation regarding that same alleged behavior, substantiate her entry into 'protected activity'. *Anderson v. Limestone County, Texas*, 2008 Tex. App. LEXIS 5041 (Tex. App. – Waco July 2, 2008, pet. denied).  In retaliation of her numerous complaints of the sexually inappropriate

and morbid harassment, the Plaintiff suffered a retaliatory termination, which she might have avoided, but for her protected activity.

### [2]. Retaliation under 42 U.S.C. §2000e-3(a) *et seq,* §704, of Title VII of the Civil Rights Act of 1964 (as amended)

56.     Plaintiff adopts the factual allegations above as stated *in haec verba.*

57.     Absent direct evidence of discrimination, the analytical framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981) is used to decide Title VII Retaliation cases based on circumstantial evidence.[1]   This analytical model has generally been adopted for retaliation claims regardless of the court or the statutory basis for the protected activity.

58.     A plaintiff pursuing a Title VII Retaliation claim must initially establish a *prima facie* case. To do so, the plaintiff must show: (i) he or she engaged in protected activity; (ii) the employer carried out an adverse employment action; and (iii) a casual connection between the protected activity and the adverse action. *Fox*, 586 F.3d 321, 331 (5th Cir. 2009).44.   In the Fifth Circuit, the mixed motive or "motivating factor" standard is also available in circumstantial evidence retaliation cases.   Accordingly a plaintiff can recover if she can show that protected activity was a "motivating factor" in the employment decision, even if other factors also motivated the practice.   See, *e.g. Richardson v. Monitronics Intern., Inc*., 434 F.3d 327, 333 (5th Cir. 2005); see *Smith v. Xerox Corp*., 602 F.3d 320, 333 (5th Cir. 2010) (holding mixed-motive standard applies to Title VII retaliation claims even where plaintiff

---

[1]Title VII, which prohibits employers from discriminating against employees and applicants based on an individuals' race, color, religion, sex or national origin, *also* prohibits an employer from retaliating against an employee who has engaged in activity protected by the Act. 42 U.S.C 2000e-3(a).

has no direct evidence of retaliation).

59.   An employee may show that he or she has engaged in protected activity by demonstrating either that she participated in an activity protected by the employment statute, or that she opposed an unlawful employment practice prohibited by the employment statute. See *Crawford v. Metro Gov't Nashville & Davidson County*, 555 U.S. at 277-78 (2009).  An employer may not retaliate against an employee for engaging in a protected activity. Pursuant to 42 U.S.C. 2000e-3(a) protected activities include, but are not limited to, (i) the filing of a lawsuit, (ii) a request for maternity leave, (iii) hiring an attorney, or (iv) an *informal oral complaint*. *Id*.

60.   Plaintiff would show that she has met the required elements under *Fox*.

(i) Plaintiff engaged in protected activity in the form of such oral and written complaints; (ii) her employer carried out multiple adverse employment action(s) against her, including her termination; and (iii) a causal connection between the protected activity and the adverse action exists in fact and in temporal proximity.  *Fox v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). Plaintiff would further argue that the causal nexus is bolstered by the extreme proximity in time between her complaints and her termination.

61.   Plaintiff is aware that pursuant to the holding in *Nassar*, Title VII Retaliation cases still require a "but-for" causation to substantiate the claim of retaliation. *University of Texas Southwestern Medical Center v. Nassar*, 2013 U.S. LEXIS 4704 (June 24, 2013).  With this in mind, Plaintiff contends that 'but-for' her complaints and involvement, constituting protected activity, with the investigating attorney regarding the sexually inappropriate behavior of her male co-workers, she would not have been terminated.

PLAINTIFF'S RETALIATION CLAIM WILL SURVIVE EVEN IF HER CLAIM(S) OF GENDER BASED DISCRIMINATION ARE ULTIMATELY DISMISSED

62.     The immutable fact remains that the Plaintiff was terminated for shifting reasons within extreme proximity in time to her (i) complaints of sexually inappropriate behavior and harassment by male co-workers, and (ii) her assistance with an investigation regarding that same behavior, as conducted by a third-party firm (Norton Rose Fulbright) not associated with the instant litigation.

63.     A plaintiff may proceed with a Title VII Retaliation claim even after the underlying discrimination claim has been dismissed. *E.g. Steffy v. Ford Motor Co. Inc*., 04-cv-319s, 2007 U.S. Dist. Lexis 20524, at *35 (W.D.N.Y. March 22, 2007)(discrimination and harassment claim dismissed but plaintiff allowed to proceed with retaliation claim); *Rivas v. Steward Ventures Inc. d/b/a Alamo Rental Car*, No. CV-05-3801, 2007 U.S. Dist. Lexis 10232, at *17 (D. Ariz., Feb. 13, 2007)(granting summary judgment on plaintiff's sexual harassment claim but permitting retaliation claim to proceed).

**VI.     INFERENCE OF PRETEXT SURVIVING SUMMARY JUDGMENT**

64.     As stated above, SIGNS offered a total of three (3) evolving reasons for Mrs. Fox's termination. The <u>first</u> was that the company no longer required her services, and that it was moving in a different direction.  The <u>second</u> was that Mrs. Fox had been terminated for cause due to misconduct.  The <u>third</u> was an outright accusation that Mrs. Fox had been terminated for allegedly engaging in an extramarital affair with Mr. Hollenberg, the President and CEO and falsification of company sales data.  Fortunately, Mr. Regas, SIGNS' general counsel, was kind enough to supply insight into this accusation in a recorded hearing before the Texas

Workforce Commission.

65.  It is settled law that an employer's shifting and dissembling reason for termination may create an inference of pretext through which a Plaintiff may survive summary judgement. An employer's truly shifting explanations creates a fact question for the jury to decide; *Nasti* v. *CIBA Specialty Chemicals Corp*., 492 F.3d 589 (5th Cir. 2007) "A court may infer pretext where a defendant has provided inconsistent or conflicting explanations for its conduct."

66.  Courts have commonly held that inconsistent explanations for the employer's decision create a genuine issue of material fact and give rise to an inference of pretext.  "A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Caldwell* v. *KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017).... An employer's inconsistent explanations for an employment decision 'cast doubt' on the truthfulness of those explanations." (quoting *Gee* v. *Principi*, 289 F.3d 342, 347-48 (5th Cir. 2002)).

67.  Since the employer's inconsistent explanations for its decision "are probative for their truth," there is a material fact issue on liability.  An employer's truly shifting explanations creates a fact question for the jury to decide;  *Nasti* v. *CIBA Specialty Chemicals Corp*., 492 F.3d 589 (5th Cir. 2007) "A court may infer pretext where a defendant has provided inconsistent or conflicting explanations for its conduct."

68.  When Defendant's reasons for termination of the employee transform over time, it gives rise to an inference that the employer's proffered explanations could be pretextual. *Caldwell* v. *KHOU-TV*, 850 F.3d 237 (5th Cir. 2017) (in which the employer had changed its explanation for termination on several occasions.).

## VII.  DAMAGES

69.     The damages under the TCHRA and Title VII consist of back-pay, front-pay (or

reinstatement), compensatory damages, punitive damages, attorneys' fees, and costs.

Each component is explained below:

a.      **Back-pay**.  Prevailing claimants under the anti-discrimination laws may recover

lost back-pay and benefits.  *See Miller v. Raytheon Co.*, 716 F.3d 138, 146 (5th

Cir. 2013).  The purpose of back pay is to "make whole the injured party by

placing that individual in the position he or she would have been in but for the

discrimination." *Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132, 1136 (5th Cir.

1988).

b.      **Front-pay**.  "Front pay refers to future lost earnings." *Wal-Mart Stores v. Davis*,

979 S.W.2d 30, 45 (Tex. App.–Austin 1998, pet. denied).  Regarding the

calculation of front-pay, the Fifth Circuit has stated that "[f]ront pay is . . .

calculated from the date of judgment to age 70, or the normal retirement age, and

should reflect earnings in mitigation of damages."  *Patterson*, 90 F.3d at 936 n. 8

(citing J. Hardin Marion, Legal and Equitable Remedies Under the Age

Discrimination in Employment Act, 45 MD.L.REV. 298, 330–334 (1986)).  *See*

*also Blum v. Witco Chem. Corp.*, 829 F.2d 367, 374 (3d Cir. 1987) ("In

calculating a front pay award, the jury must consider the expected future damages

caused by defendant's wrongful conduct from the date of judgment to

retirement.").

d.      **<u>Compensatory Damages</u>**.   Ms. Fox has suffered future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, for which she seeks recovery in this lawsuit under Chapter 21 of the Texas Labor Code and Title VII; 42 U.S.C. § 1981A(a)(1) (providing for compensatory damages for such harms under Title VII); Chapter 21 of the Texas Labor Code § 21.2585(a)(1)(providing for compensatory damages for such harms under the TCHRA).

e.      **<u>Punitive Damages</u>**.   Defendant SIGNS acted with malice and reckless indifference to Ms. Fox's federally protected civil rights, thus justifying awards of punitive damages under the TCHRA and the Title VII.   *See* 42 U.S.C. § 1981A(a)(1) (providing for punitive damages under Title VII when the discrimination is shown to be with "malice or reckless indifference").   In *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 119 S. Ct. 2118 (1999) the U.S. Supreme Court, interpreting Title VII, held that to satisfy the "malice or reckless indifference" requirement, the plaintiff does not have to prove that the violation was egregious or outrageous.   *Id*. at 535-36.   *See also Schexnayder v. Bonfiglio*, 167 Fed. Appx. 364, 368 (5th Cir. 2006) ("a jury may award punitive damages pursuant to Title VII merely if the employer knew it *may have been* violating the law.") (italics in original).

## VIII.   TRCP 47 STATEMENT

70.     Plaintiff SenLy Fox, does not seek more than damages in the amount of approximately

$450,000.00, plus her reasonable and necessary attorney's fees and Compensatory,

Punitive, and Exemplary Damages in an amount to be determined by the trier of fact

pursuant to  §41.003(a)(1) of the Tex. Civ. Prac. & Rem. Code, as well as §27.01(b)&(c)

of the Tex. Bus. & Com. Code. This amount is within the jurisdictional limits of the

Court.

## IX. REQUEST FOR JURY

71.     Plaintiff demands a trial by jury on all issues.

## X.  PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff SenLy Fox prays that Defendant

National Signs, LLC, be cited to appear and answer, and that on final trial Plaintiff be granted

relief as follows:

1) Judgment against Defendants in excess of the minimum jurisdictional limits of this

court in the amount of **$450,000.00**;

2) Judgment directing the Defendants to pay Plaintiff actual, compensatory, and punitive

damages on all counts, whether statutory or at common law;

3) Costs of suit and reasonable attorneys fees;

4) Prejudgment and post-judgment interest as provided by law;

5) Such other and further relief as Plaintiff may be justly entitled by law.

Respectfully Submitted,

_____*/s/Julian Frachtman*_____

H. Julian Frachtman
SDTX: 2695031
SBN:   24087536
tel: 832.499.0611
fax: 713.651.0819
Hfrachtmanlaw@gmail.com
3100 Richmond, Ste 203
Houston, Texas 77098

ATTORNEY FOR PLAINTIFF